07 CA 10.21.5 WGY

78020
350

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

07 CA 10.21.2 WGY

AGENTS _____
SUMMONS ISSUED ___ 4
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY CLK _____

THOMAS J. GAYDOS, on behalf of himself
and all others similarly situated,

                   Plaintiff,

                   v.

TJX COMPANIES, INC., and
FIFTH THIRD BANCORP

                   Defendant.

:
:
:
:    Civil Action No: _____
:
:
:
:    COMPLAINT - CLASS ACTION
:
:
:    JURY TRIAL DEMANDED
:
:

## PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff Thomas J. Gaydos ("Plaintiff") hereby brings this class action suit against TJX

Companies, Inc. ("TJX" or the "Company") and Fifth Third Bancorp (collectively "Defendants").

Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff

and Plaintiff's counsel, based upon the investigation undertaken by Plaintiff's counsel, which

included, inter alia, review and analysis of Defendants' websites and a TJX press release, and

various news articles.

## NATURE OF THIS ACTION

1.    Plaintiff brings this class action suit on his own behalf and on behalf of all other

persons or entities in the United States against TJX and Fifth Third Bancorp to redress Defendants'

failure to adequately safeguard certain credit card and debit card information and related data. More

specifically, this action arises from Defendants' failure to maintain adequate computer data security

of customer credit and debit card data, which was accessed and stolen by a computer hacker. As a

result of Defendants' wrongful actions, customer information was stolen from TJX's computer

network that handles a wide range of financial information for millions of customers, including

credit cards, debit cards linked to checking accounts, and transactions for returned merchandise. Because of Defendants' actions, hundreds of thousands or even millions of its customers have had their personal financial information compromised, have had their privacy rights violated, have been exposed to the risk of fraud and identity theft, and have otherwise suffered damages.

## JURISDICTION AND VENUE

2.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1332(d), as the matter in controversy exceeds $5 million, Plaintiff has diverse citizenship from Defendants, and there are more than 100 class members.

3.      Venue properly lies in this District pursuant to 28 U.S.C. §1391(a)(2), since the cause of action arose in this District, and the unlawful conduct of Defendants, out of which the cause of action arose, took place in this District.

## PARTIES

4.      Plaintiff Thomas J. Gaydos resides in King of Prussia, Pennsylvania.  Plaintiff Gaydos' Visa Check Card information was stolen from TJX's computer system, and he has been damaged as a result.

5.      Defendant TJX is a Delaware corporation with its headquarters at 770 Cochituate Road, Framingham, Massachusetts, 01701.  TJX operates retail chains in Massachusetts and throughout the United States.

6.      Defendant Fifth Third Bancorp is incorporated in Ohio with its headquarters at 38 Fountain Square Plaza, Cincinnati, Ohio, 45263.  Fifth Third Bancorp is the nation's fourth largest credit card processor, and has more than $100 billion in assets.  Fifth Third Bancorp is the sponsoring bank that handled TJX's credit card transactions during the relevant period.

2

## OPERATIVE FACTS

7.     TJX purports to be the leading off-price apparel and home fashion retailer in the United States and worldwide, with $16 billion in revenues in 2005. Its stock trades on the New York Stock Exchange under the symbol TJX. TJX operates more than 2,300 retail stores under such chains as T.J. Maxx, Marshalls, HomeGoods, A.J. Wright, and Bob's Stores. These stores are located across the United States.

8.     On January 17, 2007, TJX first publicly announced that it had been hit by a wide-reaching security breach that may leave millions of its customers around the world exposed to fraud and identity theft from transactions that date back to 2003. TJX's press release stated, in relevant part:

> The TJX Companies, Inc. (NYSE:TJX) today announced that it has suffered an unauthorized intrusion into its computer systems that process and store information related to customer transactions. While TJX has specifically identified some customer information that has been stolen from its systems, the full extent of the theft and affected customers is not yet known. This intrusion involves the portion of TJX's computer network that handles credit card, debit card, check, and merchandise return transactions for customers of its T.J. Maxx, Marshalls, HomeGoods and A.J. Wright stores in the U.S. and Puerto Rico, and its Winners and HomeSense stores in Canada, and may involve customers of its T.K. Maxx stores in the U.K. and Ireland. The intrusion could also extend to TJX's Bob's Stores in the U.S.
>
> . . .
>
> Through its investigation, TJX has learned the following with respect to the intrusion:
>
> - An unauthorized intruder accessed TJX's computer systems that process and store information related to customer transactions for its T.J. Maxx, Marshalls, HomeGoods and A.J. Wright stores in the U.S. and Puerto Rico and its Winners and HomeSense stores in Canada.
>
> - . . . . It is possible that the intrusion may extend to Bob's Stores.

- Portions of the information stored in the affected part of TJX's network regarding credit and debit card sales transactions in TJX's stores (excluding Bob's Stores) in the U.S., Canada, and Puerto Rico during 2003, as well as such information for these stores for the period from mid-May through December, 2006 may have been accessed in the intrusion. TJX has provided the credit card companies and issuing banks with information on these and other transactions.

- To date, TJX has been able to specifically identify a limited number of credit card and debit card holders whose information was removed from its system and is providing this information to the credit card companies. In addition, TJX has been able to specifically identify a relatively small number of customer names with related drivers' license numbers that were also removed from its system, and TJX is contacting these individuals directly.

- TJX is continuing its investigation seeking to determine whether additional customer information may have been compromised. TJX does not know if it will be able to identify additional information of specific customers that may have been taken.

9.    TJX's press release also stated that TJX discovered the intrusion in "mid-December,

2006." Nevertheless, TJX did not announce the intrusion until approximately one month later, when

it issued its January 17, 2007 press release.

10.    TJX's press release further stated that after the security breach occurred, the

Company "significantly strengthened the security of its computer systems." The Company did not

specify the nature of the improvements.

11.    On its website, in a section titled "Frequently Asked Questions" concerning the

security breach, TJX stated that the drivers' license numbers that were stolen were received in

transactions where merchandise was returned without receipts. The Company alluded to the

possibility that some customers' drivers' license numbers may be the same as their social security

numbers.

12.    On January 18, 2007, The Wall Street Journal reported that "people familiar with the

4

matter said the number of exposed cards could exceed the 40 million that were made vulnerable to fraud nearly two years ago in a breach involving CardSystems Solutions, Inc."

13.    On January 19, 2007, The Wall Street Journal reported that the security breach "exposed millions of consumers to potential fraud." It reiterated that the number of exposed cards could exceed 40 million, citing representatives from Visa. The article also stated that "'patterns of counterfeit fraud have been reported on some of the affected accounts,'" quoting a letter from Visa.

14.    The January 19, 2007 Wall Street Journal article also stated that U.S. retailers including TJX are required to follow "stringent card-industry rules," described as follows:

> The rules that cover transactions on cards branded with logos from Visa, MasterCard International Inc., American Express Co. and Discover Financial Services, require merchants to validate a series of security measures, such as the establishment of firewalls to protect databases. Among other things, merchants are prohibited from storing unprotected cardholder information.
>
> . . .
>
> People familiar with the situation have said that TJX doesn't comply with those requirements.

15.    On January 25, 2007, The Wall Street Journal reported that fraudulent purchases using credit and debit card numbers stolen from TJX already surfaced in several states. Hundreds of thousands of customer accounts have been affected. One TJX customer said that about $6,700 in unauthorized transactions were made with his card account number during a 10 hour period in early January 2007.

16.    Fifth Third Bancorp is the sponsoring bank that handles TJX's credit card transactions. In that role, Fifth Third Bancorp carries out transactions that begin at the checkout counter, pass through card association networks - such as those of Visa or Mastercard - go to the cardholder's issuing bank for approval, and end with the printout of a purchase receipt for the

customer to sign.

17.     As the sponsoring bank that handles TJX's accounts, Fifth Third Bancorp is "responsible for ensuring that the retailer [TJX] met the industry's data security standards," according to a New York Times article dated January 19, 2007. Fifth Third Bancorp had a duty to ensure that TJX met applicable industry data security standards, and Fifth Third Bancorp breached that duty.

18.     Referencing Fifth Third Bancorp, The Wall Street Journal reported on January 19, 2007 that "TJX Cos. might not be the only company on the hook for a security breach that has exposed millions of consumers to potential fraud." The article pointed out that because of Fifth Third Bancorp's involvement with credit card processing at TJX, "[b]ased on card-industry rules, that means Fifth Third likely will be first in line if Visa USA Inc. and MasterCard Inc. levy fines for the [TJX] breach."

19.     The security breach at TJX is currently being investigated by the Federal Bureau of Investigation, the U.S. Attorney's Office in Boston, and other law enforcement agencies.

20.     Plaintiff Thomas Gaydos used his Visa Check Card at Marshalls from May 2006 to December 2006, and most likely in 2003 as well. He first noticed a problem with his card on January 27, 2007. On that date he attempted to withdraw funds from an ATM machine but was only permitted to withdraw $20, an amount less than he needed. He subsequently tried to withdraw funds from another ATM machine but received a message that his account had been deactivated.

21.     Plaintiff Gaydos called his bank, Bank of America, and was told that two fraudulent Western Union transactions were attempted on his card. The bank flagged the transactions as possibly being fraudulent, and restricted his card until it was ultimately deactivated. Plaintiff

6

Gaydos went to a Bank of America branch to discuss the matter further. He was told that the card compromise was likely related to TJX's security breach because the pattern of fraudulent activity on his account was consistent with fraudulent activity affecting other cardholders whose cards were compromised by TJX's security breach.

22.     Plaintiff Gaydos is awaiting receipt of a replacement card in the mail. Because of the time lag required to process and deliver a new card, he has had to update several automatic payments to link them to an alternate funding source such as PayPal. This was time consuming and a considerable inconvenience.

23.     Plaintiff Gaydos had limited or no use of his card from the date it was first restricted to the present, a period of nearly one week. He will continue to have no use of the card until his replacement card is received in the mail. This is a considerable inconvenience because he has no other debit or credit cards to use.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this class action, pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), on behalf of himself and all others similarly situated, consisting of all persons or entities in the United States who have had personal or financial data stolen from TJX's computer network, and who were damaged thereby (the "Class"). The Class does not include Defendants, or their officers, directors, agents, or employees.

25.     The Class consists of hundreds of thousands, and possibly millions, of customers of TJX's retail stores located throughout Massachusetts and the United States. While the exact number of Class members and the identities of individual Class members are unknown at this time, and can only be ascertained through appropriate discovery, based on the fact that hundreds of thousands of

7

customer accounts have already been affected, the Class is so numerous that joinder of all Class members is impracticable.

26.     Defendants' conduct affected all Class members in the same way. Defendants' conduct in failing to properly safeguard customers' personal and financial data and in failing to notify customers of the security breach as soon as practical after the breach was discovered is uniform among the Class.

27.     Questions of law and fact common to all Class members predominate over any questions affecting only individual members. Such questions of law and fact common to the Class include:

        a.      whether Defendants acted wrongfully by failing to properly safeguard customers' financial data;

        b.      whether Defendants failed to notify Class members of the security breach as soon as practical after the breach was discovered; and

        c.      whether Plaintiff and the Class have been damaged, and, if so, what is the appropriate relief as to each member of the Class.

28.     Plaintiff's claims, as described herein, are typical of the claims of all Class members, as the claims of Plaintiff and all Class members arise from the same set of facts regarding Defendants' failure to protect Class members' financial data. Plaintiff maintains no interests that are antagonistic to the interests of other Class members.

29.     Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions of this type. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests

8

of the Class.

30.     This class action is a fair and efficient method of adjudicating the claim of Plaintiff and the Class for the following reasons:

a.    common questions of law and fact predominate over any question affecting any individual Class member;

b.    the prosecution of separate actions by individual members of the Class would likely create a risk of inconsistent or varying adjudications with respect to individual members of the Class thereby establishing incompatible standards of conduct for Defendants or would allow some Class members' claims to adversely affect other Class members' ability to protect their interests;

c.    this forum is appropriate for litigation of this action since the cause of action arose in this District;

d.    Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

e.    the Class is readily definable, and prosecution as a class action will eliminate the possibility of repetitious litigation, while also providing redress for claims that may be too small to support the expense of individual, complex litigation.

31.     For these reasons, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

<u>**COUNT I**</u>

<u>**NEGLIGENCE**</u>

<u>**(As To All Defendants)**</u>

9

32.     Plaintiff repeats and re-alleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

33.     Defendant TJX assumed a duty to use reasonable care to keep the credit card and other nonpublic information of the Class that is, or was, in its possession and control private and secure. By its acts and omissions described herein, TJX unlawfully breached this duty. The Class was damaged thereby.

34.     The private financial information of the Class that was compromised by the breach of TJX's security included, without limitation, information that was being improperly stored and inadequately safeguarded in violation of, among other things, industry rules and regulations. According to The Wall Street Journal on January 19, 2007, "[p]eople familiar with the situation have said that TJX doesn't comply with those [industry] requirements." Those rules and regulations created a duty of reasonable care and a standard of care that was breached by TJX.

35.     According to The New York Times on January 19, 2007, Defendant Fifth Third Bank is the "sponsoring bank that handles TJX's accounts, which makes it responsible for ensuring that the retailer met the industry's data security standards." Fifth Third Bancorp breached its duty to ensure TJX met applicable industry security standards.

36.     The breach of security was a direct and proximate result of Defendants' failure to use reasonable care to implement and maintain appropriate security procedures reasonably designed to protect the credit and debit card information and other nonpublic information of the Class. This breach of security and unauthorized access to the private nonpublic information of the Class was reasonably foreseeable.

37.     Defendants were in a special fiduciary relationship with the Class by reason of their

entrustment with credit and debit card information and other nonpublic information. By reason of this fiduciary relationship, Defendants had a duty of care to use reasonable means to keep the credit and debit card information and other nonpublic information of the Class private and secure. Defendants also had a duty to inform Class members in a timely manner when their credit and debit card information and other nonpublic information became compromised. Defendants unlawfully breached these duties.

38. Pursuant to Class members' rights to privacy, Defendants had a duty to use reasonable care to prevent the unauthorized access, use, or dissemination of the credit and debit card information and other nonpublic information. Defendants unlawfully breached this duty.

39. The compromise of the Class' nonpublic information, and the resulting burden, fear, anxiety, emotional distress, loss of time spent seeking to prevent or undo any further harm, and other economic and non-economic damages to the Class, were the direct and proximate result of Defendants' violations of their duty of care.

40. Defendants had a duty to timely disclose the data compromise to all customers whose credit and debit card information and other nonpublic information was, or was reasonably believed to have been, accessed by unauthorized persons. Disclosure was required so that, among other things, the affected customers could take appropriate measures to avoid unauthorized charges on their accounts, cancel or change account numbers on the compromised cards, and monitor their account information and credit reports for fraudulent charges. Defendants breached this duty by failing to notify Class members in a timely manner that their information was compromised. Class members were harmed by Defendants' delay because, among other things, fraudulent charges have been made to Class members' accounts.

41. Defendants had a duty to use reasonable care to destroy, and not unnecessarily store,

11

credit and debit card information and other personal information of the Class. By the acts described herein, Defendants negligently breached this duty, and the Class was harmed thereby.

42.    Defendants knew or should have known that TJX's network for processing and storing credit and debit card transactions and related information had security vulnerabilities. Defendants were negligent in continuing such data processing in light of those vulnerabilities and the sensitivity of the data.

43.    As a direct and proximate result of Defendants' conduct, the Class suffered damages including, but not limited to, loss of control of their credit card and other personal financial information; monetary loss for fraudulent charges incurred on their accounts; fear and apprehension of fraud, loss of money, and identity theft; the burden and cost of credit monitoring to monitor their accounts and credit history; the burden and cost of closing compromised accounts and opening new accounts; the burden of closely scrutinizing credit card statements for past and future transactions; damage to their credit history; loss of privacy; and other economic damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests the following relief:

A.    that this Court certify this action as a Class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), and appoint Plaintiff and his counsel to represent the Class;

B.    that this Court enter judgment in favor of Plaintiff and the Class, and against Defendants under the legal theories alleged herein;

C.    that this Court award damages under the common law theories alleged herein;

D.    that this Court award attorneys' fees, expenses, and costs of this suit;

E.    that this Court award Plaintiff and the Class pre-judgment and post-judgment

12

interest at the maximum rate allowable by law; and

      F.     that this Court award such other and further relief as it may deem just and

appropriate.

## JURY TRIAL DEMAND

     Plaintiff, on behalf of himself and the Class, demands a trial by jury on all issues so triable.

Dated: February 5, 2007               Respectfully Submitted,

                         STERN SHAPIRO WEISSBERG
                          &amp; GARIN, LLP

                         Jonathan Shapiro
                         90 Canal Street
                         Boston, MA  02114-2022
                         TEL:  (617) 742-5800
                         FAX: (617) 742-5858

                         BERGER &amp; MONTAGUE, P.C.
                         Sherrie R. Savett
                         Michael T. Fantini
                         Jon Lambiras
                         1622 Locust Street
                         Philadelphia, PA  19103
                         TEL:  (215) 875-3000
                         FAX: (215) 875-4636

                         MAGER &amp; GOLDSTEIN, LLP
                         Carol A. Mager
                         One Liberty Place, 21st Floor
                         1650 Market Street
                         Philadelphia, PA 19103
                         TEL: (215) 640-3280
                         FAX: (215) 640-3281

                         Counsel for Plaintiff and the Class